JUSTICE LEAPHART
dissenting.
¶52 I dissent.
¶53 The prosecutor requested a narrative statement from the State’s witness, Detective Baker, “Detective, tell us what happened next.” In response to this open-ended invitation, Detective Baker responded, “... I told her that we were going to go down to the police department, and I was going to give her a chance to talk to me and be interviewed to provide her side of the story because there’s always two sides ....” The prosecutor then asked the detective to take the matter a step further by asking, “So did you get a chance to speak with the defendant there at the police station?” To which the detective replied that, yes he did speak with her at the station where he advised her of the Miranda warning before any questions were asked of her and that “she invoked her right to have an attorney before any questions so the interview was stopped.”
¶54 The question is, did this sworn testimony from the detective violate the principles of the Doyle decision? Doyle v. Ohio, 426 U.S. 610, 96 S. Ct. 2240 (1976). The State argues that there was no violation of Doyle because the testimony was the result of a “non-responsive answer” and the prosecutor did not seek to capitalize on the testimony to impeach Upshaw.
¶55 The State’s argument that the testimony arose from a “non-responsive answer” is somewhat disingenuous given that the prosecutor did not pose a “question” seeking a “response.” Rather, he merely asked the detective to give an open-ended narrative: “Tell us what happened next.” If an attorney chooses to seek narrative answers, he or she must have the witness adequately prepared so as *179 to avoid inadvertent discussion of legally forbidden topics. Whether the detective’s testimony was elicited or volunteered, the consequence to the defendant is the same: the jury is informed that the defendant, although given the opportunity, chose not to tell the officer ‘her side of the story.” The purpose of the Doyle rule is not to punish the prosecution but to honor and preserve the defendant’s constitutional right to remain silent, irrespective of whether the testimony was intentionally elicited or inadvertently volunteered.
¶56 Similarly, the argument that the State did not attempt to “use” the testimony against the defendant misses the point. The question is not whether the State used the testimony, but whether the jury “used” or relied on the evidence in reaching its determination of guilt. We can only assume that the jury considered all the evidence and testimony before it regardless of whether the prosecutor chose to emphasize the testimony or not.
¶57 Finally, as the Court points out, since defense counsel did not object to the detective’s testimony at trial, a question is presented as to whether the alleged error should be reviewed under the common law plain error rule. The Court’s opinion is puzzling in this regard in that the Court concludes that there was no plain error. With no objection and no plain error, the Court would normally conclude that the Doyle issue is not properly before us. The Court, despite the absence of plain error, nonetheless engages in a Doyle analysis and concludes that: “The brief mention of Upshaw’s choice to remain silent was confined to a minor portion of the detective’s testimony. The prosecutor did not pursue this issue, did not use the testimony to impeach Upshaw and made no mention of it in either his cross-examination of Upshaw or in his closing argument. Unlike in Sullivan and Furlong, the prosecutor here did not comment upon the fact that Upshaw had failed earlier to volunteer her version of events to the police.” ¶ 26. Logic dictates that, unless there was plain error, the Court would not have made these observations which are only relevant to a Doyle analysis.
¶58 As indicated above, I would conclude that the errors alleged by Upshaw implicated fundamental constitutional rights and thus amounted to plain error. State v. Sullivan, 280 Mont. 25, 32-33, 927 P.2d 1033, 1037-38 (1996). Upshaw, like Sullivan, alleges that the testimony in question violated her right to due process and her privilege against self-incrimination. In Sullivan we found plain error and stated:
Because of the importance of these [fundamental] rights and the *180 effect that a denial of these rights would have on the fairness of a trial, and notwithstanding defense counsel’s failure to contemporaneously object or to claim error pursuant to § 46-20-701(2), MCA, our failure to review Sullivan’s claims would leave unsettled a question as to the fundamental fairness of his trial.
Sullivan, 280 Mont. at 33, 927 P.2d at 1038.
¶59 Here, the detective’s testimony clearly created an inference for the jury that by remaining silent after having been given an opportunity to tell “her side of the story,” Upshaw must be guilty of the alleged crime. Our failure to find plain error leaves unsettled a question as to the fundamental fairness of her trial.
¶60 Given the Doyle error, I would reverse Upshaw’s conviction
JUSTICE NELSON concurs in the dissent of JUSTICE LEAPHART.